**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GLEN VARY,

      Petitioner,                        CASE NO. 2:09-CV-13943
                                            HONORABLE GEORGE CARAM STEEH
v.                                   UNITED STATES DISTRICT JUDGE

BLAINE LAFLER, Warden,

      Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DENYING CERTIFICATE OF APPEALABILITY**

### I. Introduction

      Glen Vary, ("Petitioner"), a state prisoner, filed this habeas case under 28 U.S.C. §

2254. Petitioner is serving a term of life imprisonment, two concurrent terms of 225

months-to-40 years, and a consecutive two-year term. The sentences result from

Petitioner's Wayne Circuit Court convictions of first-degree murder, MICH. COMP. LAWS

750.316, assault with intent to commit murder, MICH. COMP. LAWS 750.83, assault with

intent to commit armed robbery, MICH. COMP. LAWS 750.89, and possession of a firearm

during the commission of a felony, MICH. COMP. LAWS 750.227b. Petitioner filed a petition

for writ of habeas corpus raising eight claims for relief. Respondent, through the Michigan

Attorney General's Office, filed a response, arguing that Petitioner's claims lack merit or are

procedurally defaulted. For the reasons which follow, the petition will be denied.

## II. <u>Facts</u>

Petitioner and his co-defendant, Frederick Relerford, were tried together for crimes arising out of the robbery and shooting of two sixteen-year-old boys, Darwin McMullen and Robert Montgomery. Montgomery died of his wounds, but McMullen survived, and identified Petitioner and Relerford as the perpetrators.

At trial, McMullen testified that on December 18, 2002, he and Montgomery were sitting in his car parked a few lots away from his house on a residential Detroit street. Two males wearing hooded sweatshirts and partially covered faces walked towards the car. They gestured to McMullen, who opened his door.

The men then revealed guns and told the victims to give them all of their money. McMullen and Montomery complied, but after one of the men requested that McMullen give him his coat, a struggle ensued. McMullen heard gunshots and the two men ran away. McMullen was shot in the leg, and he saw Montgomery slouched over in the car seat. Montgomery had been shot in the back of the head. McMullen attempted to run home, but he collapsed in the street. Police and an ambulance arrived, and McMullen was transported to the hospital.

At trial, McMullen identified Relerford as the man who struggled with him, and he identified Petitioner as the man who was standing next to Montgomery's side of the car.

McMullen was interviewed at the hospital by the officer that accompanied him from the scene. He indicated that he did not know the identity of the suspects. He was later interviewed by another officer, and he gave a physical description of the suspects. On redirect-examination, McMullen explained that he had seen the perpetrators around the neighborhood prior to the shooting, but he did not know their identities.

2

Eleven days later, McMullen was once again interviewed, and this time he informed an officer that rumors were circulating in the neighborhood that identified the two individuals by their nicknames Bay-Bay and Fred-Fred.  Police officers used a database to identify Petitioner by his nickname, and they put together a photo lineup.  McMullen then identified Petitioner's photograph as depicting one of the men who perpetrated the crime.  T h e prosecution also presented the testimony from Petitioner's cell mate, Ivan Warren.  Warren testified that Petitioner admitted to him that he had committed the crimes.  Another inmate at the jail, however, testified that the cell mate admitted to him that he was setting up Petitioner in exchange for a sentencing agreement.

Just prior to the conclusion of its case-in-chief, the prosecutor learned that she had been erroneously asserting that Montgomery had been shot with a .45 caliber weapon. Police found .45 caliber casings and .44 caliber bullet fragments at the scene.  Initially, authorities believed that a fragment recovered from Montgomery's head came from a .45 caliber bullet.  Subsequent ballistic tests were conducted during the course of the trial.  The new tests showed that Montgomery was shot with the .44 caliber weapon and not the .45 caliber handgun.  The .45 caliber casings found at the scene were identified as being produced by a handgun recovered at a different murder scene.  Both defense attorneys moved for, and were subsequently denied, a request for a mistrial.

At the conclusion of closing arguments, the jury deliberated and returned a verdict of guilty on all counts.

Following sentencing, Petitioner filed an appeal of right in the Michigan Court of Appeals. His appellate brief raised three claims:

I.  A defendant is entitled to a new trial when the jury verdict in favor of the

3

prosecution is rendered against the great weight of the evidence presented in the trial.

II. A defendant is entitled to a new trial, or in the alternative a remand for an evidentiary hearing, when there is new evidence that was discovered after the verdict, but prior to sentencing.

III. Defendant in a criminal matter is denied his right to the effective assistance of counsel when his attorney:

> A. Fails to move for a new trial (after the verdict but prior to sentencing) based on new evidence and the great weight of the evidence; and

> B. Fails to move the court for a judgment notwithstanding the verdict, when to verdict [sic] is against the great weight of the evidence.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions. *People v. Vary,* 2006 Mich. App. LEXIS 1279 (Mich. Ct. App. Apr. 20, 2006). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied Petitioner's application because it was not persuaded that the questions presented should be reviewed. *People v. Vary,* 476 Mich. 867, 720 N.W.2d 322 (2006).

Petitioner then returned to the trial court and filed a motion for relief from judgment. The motion raised the following claims:

> I. Petitioner's 5th Amendment right against self-incrimination and 6th Amendment right to counsel were violated when the state, by way of Sgt. Shawn Ellis, obtained an illegal confession by use of a jail house snitch.

> II. Petitioner is entitled to a new trial where he possess newly discovered evidence, to which, an affidavit from co-defendant Fred Relerford that exonerates Petitioner regarding his participation in this crime.

> III. The state committed prosecutorial misconduct when it relied on the perjurious testimony of Ivan Warren, regarding Petitioner's alleged admission of killing Robert Montgomery with a .45 caliber weapon, during its closing

4

argument, while knowing that such weapon did not cause the victim's death.

IV.  Petitioner's 6th Amendment right to effective assistance of trial counsel and appellate counsel were violated where both counsel(s) performance fell below an objective standard of reasonableness:

>    A.  Trial counsel provided ineffective assistance of counsel when he continued to use the same trial strategy after finding out that .45 caliber weapon did not cause the victim's death.

>    B.  Appellate counsel provided ineffective assistance of counsel when failing to file the proper trial court motions to support Petitioner's motion for new trial and verdict is against the great weight of the evidence claims, as required by law.

V.  The trial court abused its discretion when it failed to grant Petitioner's motion for dismissal or mistrial behind the state chain of custody violation that led to vital ballistic evidence being misplaced or lost, and which undermined Petitioner's entire trial defense and based on negligence of the state.

The trial court denied the motion in an opinion issued on November 6, 2007. Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims.  The state appellate denied the application because Petitioner "failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Vary*, No 284110 (Mich. Ct. App. December 9, 2008).  Petitioner appealed this decision to the Michigan Supreme Court, but his application was denied with citation to the same court rule.  *People v. Vary*, 484 Mich. 867, 769 N.W.2d 668 (2009).

Petitioner then filed the instant petition, raising the following eight claims:

I.  Petitioner's conviction violates due process where the evidence is against the great weight of the evidence. The Court of Appeals' conclusion is contrary to Supreme Court precedent.

II.  Petitioner is entitled to a new trial based on newly discovered evidence. The Court of Appeals' conclusion was an unreasonable determination.

III.  Petitioner was denied VI Am. right to effective counsel. The Court of Appeals' conclusion was contrary to Supreme Court precedent.

5

IV.   Petitioner's conviction was obtained in violation of the 5th Am. right against self-incrimination. The Courts' decision [is] contrary to U.S. precedent.

V.   Petitioner is entitled to a new trial where newly discovered evidence that exonerates him. The court's conclusion is unreasonable.

VI.   Petitioner's conviction violates the XIV Am. due process where the prosecutor committed misconduct. The Court's conclusion was contrary.

VII.   Petitioner was denied his VI Am. right to effective assistance of trial and appellate counsel. The Court's conclusion was unreasonable.

VIII.   Petitioner's conviction was obtained in violation of the XIV Am. due process right. The Court's conclusion was contrary to U.S. precedent.

## IV.   Analysis

### A.   Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus

only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An

"unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or. . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*  "[I]f this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar

7

federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* Finally, in *Cullen v. Pinholster*, 131 S.Ct.1388, 1398, 179 L. Ed. 2d 557 (2011), the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."

## B. Great Weight of the Evidence

In his first habeas claim, Petitioner alleges that the verdict was against "the great weight of the evidence." In part of his third claim, Petitioner argues that his trial counsel was ineffective for failing to move for a new trial on those grounds following his conviction. Specifically, Petitioner asserts that the credibility of McMullen's identification testimony was undermined by the fact that he identified Petitioner based on rumors that Petitioner was responsible for the shooting.

Petitioner's first claim is not cognizable. "A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence." *Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002); s*ee also Cukaj v.*

8

*Warren*, 305 F.Supp.2d 789, 796 (E.D. Mich. 2004) (same).

In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). This authority is conferred by statute and court rule. *Id.* at 634 (citing MICH. COMP. LAWS § 770.1 and MICH. CT. R. 6.431(B)). The Michigan Supreme Court has noted that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8.

Therefore because Petitioner challenges the Michigan Court of Appeals' construction or application of state law in his first claim, he is not entitled to relief. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law"); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is thus not warranted on such a basis.

In his reply brief, Petitioner asserts for the first time that not only was the verdict against the great weight of the evidence, but that it was also legally insufficient under the Due Process Clause. Such a claim would be cognizable under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), but it was never exhausted on that basis in the state courts. Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state

9

courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842. In order for an issue to meet the exhaustion requirement, the claim "must include a reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 163 (1996). "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414-415 (6th Cir. 2009).

Petitioner did not give the state courts a fair opportunity to address a constitutionally-based insufficiency of the evidence claim. His appellate brief cited only state law, and asserted that the great weight of the evidence demonstrated that he was entitled to a new trial. The brief makes no reference to a constitutional guarantee or the *Jackson v. Virginia* standard. Accordingly, because the only exhausted legal basis for Petitioner's claim is a non-cognizable state-law claim, he cannot demonstrate entitlement to habeas relief based on his first issue.

The related portion of Petitioner's third claim is without merit. The right to effective assistance of counsel protects the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. "T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that

10

course should be followed." *Id.* To demonstrate prejudice a Petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

When the trial court denied Petitioner's motion for relief from judgment, it did not accept Petitioner's representation that the evidence presented against him at trial was weak. In the context of deciding whether Petitioner was entitled to a new trial based on newly discovered evidence, the trial court was required under state law to determine whether "the new evidence makes a different result probable on retrial." *People v. Cress*, 468 Mich. 678, 692 (2003). The state trial court found that "the evidence in support of Vary's guilt included the eyewitness testimony of Darwin McMullen, and his own confession to Ivan Warren. If retrial were granted based on Relerford's current statement, the prior statement of Releford to Sgt. Ellis (implicating Petitioner and Relerford) would also be admitted along with the testimony of Darwin McMullen. The results of the first trial would not be different." Opinion Denying Motion for Relief From Judgment, at 9. It follows that there is not a reasonable probability that the trial court would have granted a motion for new trial based on a great weight of the evidence claim. If the trial court relied on McMullen's identification testimony to deny Petitioner's newly-discovered-evidence claim, it surely would not have granted a motion for new trial based only on the alleged weakness of that testimony. Trial counsel's failure to file such a motion therefore did not deprive Petitioner of his right to the effective assistance of counsel.

Moreover, contrary to Petitioner's argument, McMullen did not identify Petitioner solely based on a rumor in his neighborhood that Petitioner committed the crime. McMullen recognized the perpetrators from the neighborhood, but he did not know their identities.

11

Subsequently, McMullen heard through a friend that Bay-Bay and Fred-Fred had committed the crimes. He brought this identifying information to the police, and by using these nicknames to search a database, the police were able to put together a photographic lineup containing Petitioner's picture. McMullen then identified Petitioner's photograph in the lineup. Petitioner's suggestion that McMullen identified the photograph of Petitioner because he knew who Bay-Bay was–and was therefore identifying the person identified in the rumor rather than from a recollection of the incident–ignores McMullen's redirect examination testimony that he did not know the nicknames of the perpetrators until a few days after the shooting. See T II, at 143-144.

Accordingly, McMullen's identification testimony is not undermined by the fact that the police used a rumor as a source of information to put together the photographic lineup. Petitioner has failed to demonstrate entitlement to habeas relief based on this claim.

## B. <u>Newly Discovered Evidence</u>

Petitioner's second and fifth claims assert that the state trial court erroneously refused to grant a new trial in light of newly discovered evidence. In the remaining portion of Petitioner's third claim, he asserts that his appellate counsel was ineffective for failing to properly present this issue to the state courts following his conviction.

Petitioner first presented the basis for this claim to the state courts in his appeal of right, where he asserted that Relerford was willing to testify that he committed the crime with another man and that Petitioner was not involved. The Michigan Court of Appeals denied the claim because Petitioner had not supported it with an affidavit from Relerford or his trial counsel. Petitioner then obtained an affidavit from Relerford and presented the claim again in his motion for relief from judgment. In his affidavit, attached to the petition as "Exhibit B",

12

Relerford claims that he committed the crime with a man named "Julius," presumably the same man found dead at the subsequent murder scene where the .45 caliber handgun used in the present case was discovered. The trial court denied the claim because Relerford's affidavit was "inherently suspect" and was contradicted by his own statement to police which implicated himself and Petitioner, and because it was dated well after his own appeal had been denied by the state courts.

These claims cannot form the basis for granting habeas relief. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Petitioner's third and fifth claims challenging the state trial court's failure to order a new trial based on new evidence of innocence is therefore not cognizable on federal habeas review. *Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001) ("A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding.").

In any event, "[r]ecanting affidavits and witnesses are viewed with extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). In this case, the timing of Relerford's affidavit renders it lacking in credibility because it was executed only after he had been convicted, his appeal rejected, and he had nothing to lose. *Drew v. Scott*, 28 F.3d 460, 463 (5th Cir.1994) ("we still have little confidence in [the codefendants] postsentencing truth experience because he had nothing whatsoever to lose by incriminating himself after receiving a 60-year sentence."); *United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983) (holding that the district court may deny the defendant a new

13

trial, without an evidentiary hearing, if it determines that a previously silent accomplices's postconviction willingness to exculpate his codefendant is not credible).   Given the suspicious eye generally cast upon recanting affidavits and the facts of this case, the state trial court did not unreasonably deny Petitioner's request for a new trial.   Petitioner has therefore failed to demonstrate entitlement to habeas relief based on these two claims.

The remainder of Petitioner's third claim, asserting that his appellate counsel was ineffective for failing to obtain the affidavit in time for Petitioner's direct appeal, is also without merit.   Relerford admits in his affidavit that he did not disclose that Julius was his accomplice earlier "because I was informed that it would be in my best interest legally to not make a statement until after my trial had concluded."   Vary's affidavit does not state that he was willing to come-forward at sentencing to support Petitioner's motion for a new trial.   If Relerford was unwilling to come-forward at trial, he likely would have been equally unwilling to have done so while his own appeal was pending.   In fact, the affidavit is dated September 28, 2006, after Relerford's appeal had become final.   *See People v. Relerford*, 2006 Mich. App. LEXIS 1530 (Mich. Ct. App. May 2, 2006).   Petitioner has not demonstrated a reasonable probability that the result of his direct appeal would have been different if his counsel had attempted to obtain Relerford's affidavit earlier.   The state trial court reasonably adjudicated this claim.

## C. Right Against Self-Incrimination

In his fourth claim, Petitioner asserts that his Fifth-Amendment right against self-incrimination was violated by use of a jailhouse informant to obtain a statement from him. This claim was raised in Petitioner's motion for relief from judgment, and the trial court denied it on the merits because the informant testified that Petitioner confessed to him prior

14

to the informant meeting with any police officer.[1]  Petitioner contends that this rationale is incorrect, and that the police intentionally used the informant as their agent to elicit a confession from Petitioner.  Even if Petitioner is correct, the claim would still fail.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. *Id.* at 444. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody . . . ." *Id.*  Though *Miranda* must be enforced strictly, its application lies "only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984).

In *Illinois v. Perkins*, 496 U.S. 292 (1990), the state sought to  elicit statements from an inmate regarding a murder by placing an undercover agent in his cell.  The agent did not inform the inmate of his *Miranda* warnings before eliciting an incriminating statement.   The Supreme Court held that an inmate's confession was admissible because it was not the product of a custodial interrogation.   *Id.* at 296-97.  The Supreme Court noted that the rationale underlying *Miranda* dictates that the warnings are only necessary during "incommunicado interrogation of individuals in a police-dominated atmosphere." *Id.* at 296 (quoting *Miranda*, 384 U.S. at 445).  The Court recognized that it was "the premise of

---

[1]

Both state appellate courts denied relief by citing Michigan Court Rule 6.508(D).  In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an en banc decision, held that brief form orders by the Michigan appellate courts invoking Rule 6.508(D) are unexplained orders within the meaning of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).  Such form orders are presumed to uphold or reject the last reasoned decision below. *Id.* (citing *Ylst*, 501 U.S. at 803).  Accordingly, the decision of the trial court controls for purposes of habeas review.

*Miranda* that the danger of coercion results from the interaction of custody and official interrogation." *Id.* at 297.  When the government appears to control the suspect's fate, the Court has assumed that there are pressures that may weaken the suspect's will. *Id.* But when the suspect "does not know that he is conversing with a government agent, these pressures do not exist." *Id.* Thus, the concerns underlying *Miranda* are inapplicable in the undercover agent context, even when the suspect is incarcerated. *Id.*

Accordingly, even assuming the police used the jailhouse informant in this case to obtain Petitioner's incriminating statement, there was no violation of his Fifth Amendment rights.  The result reached by the state court was correct, and Petitioner has not demonstrated entitlement to relief based on this claim.

### D.  Claims Regarding the Murder Weapon

Petitioner raises a number of claims regarding the fact that the prosecutor had initially asserted that a .45 caliber weapon was used to kill Montgomery, but test results obtained during trial revealed that a .44 caliber weapon was used.  Petitioner's sixth claim asserts that the prosecutor committed misconduct by relying on the testimony of the jailhouse informant that Petitioner claimed to have shot the victim with a .45 caliber handgun, knowing it to be false.  Petitioner's seventh claim asserts that his trial counsel performed deficiently when he failed to alter the defense strategy once the new ballistics report confirmed that it was a .44 caliber weapon that caused Montgomery's death.  Finally, Petitioner's eighth claim asserts that his trial was rendered unfair in violation of Fourteenth Amendment when the prosecutor was allowed to change her theory regarding the murder weapon in the midst of trial.

With respect to the prosecutorial misconduct claim, the trial court rejected this claim on the grounds that "there is no evidence to establish that defendant did not tell [the

16

informant] that he had the .45 caliber weapon."  Opinion Denying Motion for Relief From Judgment, at 11.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story does not establish perjury. *Malcum*, 276 F. Supp. 2d at 684 (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. Id.

Petitioner has failed to establish that the jailhouse informant committed perjury. While a .44 caliber gun may in fact have been used to kill the deceased victim, it is possible that Petitioner told the informant that he used a .45 caliber weapon.  The evidence at trial

17

established that both types of weapons were used at the scene. In order to establish that testimony was falsely given, it is not enough for a defendant to simply show that the allegedly false testimony has been challenged by another witness. *See United States v. Brown*, 634 F. 2d 819, 827 (5th Cir. 1981). More importantly, assuming that the eyewitnesses lied about what Petitioner told him, Petitioner is still not entitled to habeas relief on his perjury claim, because he cannot show that the prosecutor knew that the informant had testified falsely. *See Rosencrantz v. Lafler*, 568 F. 3d 577, 587 (6th Cir. 2009); cert. den. 130 S. Ct. 2401, 176 L. Ed. 2d 925 (2010). Accordingly, Petitioner is not entitled to habeas relief based on this claim.

With respect to Petitioner's seventh claim, he has failed to demonstrate that he was denied the effective assistance of counsel. Trial counsel's theory of defense was mistaken identification. The defense did not depend on the caliber of the gun used to kill Montgomery, nor did the prosecutor connect either weapon to Petitioner. McMullen testified at trial that both perpetrators were armed with handguns, and the police discovered both .44 caliber and .45 caliber bullets and casings at the scene of the shooting. The prosecutor did not connect the .45 caliber handgun discovered at the other crime scene with Petitioner, and the .44 caliber weapon was never found. Petitioner has never explained how his defense would have been altered had he known that the murder weapon was not the one recovered. As the prosecutor asserted in closing argument:

> There was some confusion over whether a forty-four or forty-five slug killed Robert. I don't know a whole lot about guns but I know this much, both kill. Both guns were used at that scene. It doesn't matter which one killed Robert or shot D.J. The fact is Robert's dead and D.J. was injured as a result of one of those guns that this defendant and the other defendant had. It doesn't matter who pulled the trigger. That's aiding and abetting.

18

D.J. wasn't confused when he told you that this defendant and the co-defendant are the ones that had - both had guns, both tried to rob him, both tried to kill him and killed Robert.  Both are guilty; guilty of felony murder, guilty of first-degree murder, guilty of assault to rob while armed, and guilty of assault with intent to murder and felony firearm because they had guns while they were committing these felonies.

T V, at 22.

Petitioner has failed to demonstrate that there is a reasonable probability that the result of his trial would have been different had his counsel attempted to change tactics and made some unspecified use of the fact that a .44 caliber gun killed Montgomery.  Petitioner has not established entitlement to relief based on this claim.

Finally, Petitioner eighth claim fails for the same reason.  The Supreme Court has explained that in cases involving review of  a state-court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Even assuming that it was unfair for the prosecutor to abandon her theory that the forty-five was the murder weapon, the error did not have a substantial and injurious influence in determining the jury's verdict.

### III.  Conclusion

The Court will deny the Petition for Writ of Habeas Corpus.  The Court will also deny Petitioner a Certificate of Appealability.  Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R.APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a

19

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. **Order**

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED**.

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

Dated:  September 26, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 26, 2011, by electronic and/or ordinary mail .

S/Josephine Chaffee
Deputy Clerk

---

21